# United States Court of Appeals
## For the First Circuit

No. 23-1043

DHANANJAY PATEL, SAFDAR HUSSAIN, VATSAL CHOKSHI, DHAVAL PATEL,
and NIRAL PATEL, on behalf of themselves and all others
similarly situated,

Plaintiffs, Appellants,

v.

7-ELEVEN, INC.,

Defendant, Third-Party Plaintiff, Appellee,

MARY CADIGAN; ANDREW BROTHERS,

Defendants,

DP MILK STREET INC.; DP JERSEY INC.; DP TREMONT STREET INC.;
DPNEWTO1,

Third-Party Defendants.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

---

Before

Montecalvo, Selya, and Thompson,
Circuit Judges.

---

Shannon Liss-Riordan, with whom Michelle Cassorla and
Lichten & Liss-Riordan, P.C. were on brief, for appellants
Dhananjay Patel, Safdar Hussain, Vatsal Chokshi, Dhaval Patel, and
Niral Patel.

David C. Kravitz, Deputy State Solicitor, with whom Douglas S. Martland, Assistant Attorney General, Peter N. Downing, Assistant Attorney General, and Kate Watkins, Assistant Attorney General, were on brief, for the Commonwealth of Massachusetts, amicus curiae.

Norman M. Leon, with whom Patricia C. Zapata, DLA Piper LLP, Matthew J. Iverson, and Nelson Mullins Riley & Scarborough LLP were on brief, for appellee 7-Eleven.

———————————————

August 29, 2023

———————————————

**PER CURIAM**.   Plaintiffs, who collectively comprise a putative class of franchisees, have been classified as independent contractors of their franchisor, Defendant 7-Eleven, Inc. ("7-Eleven").   Wishing instead to be classified as employees, Plaintiffs sued 7-Eleven for violations of Massachusetts wage laws.

For the second time now, this case presents a novel question of Massachusetts law.  To be specific, resolving the present appeal will require us to consider what is meant, in the context of a franchise arrangement, by "performing any service" as that phrase is used in the Massachusetts Independent Contractor Law ("ICL"), Mass. Gen. Laws ch. 149, § 148B(a) -- an issue which the Massachusetts Supreme Judicial Court ("SJC") has not squarely addressed.

Accordingly, as "[t]he SJC is the final arbiter of Massachusetts law," Genereux v. Raytheon, Co., 754 F.3d 51, 57 (1st Cir. 2014), we certify this unresolved question to that court, pursuant to SJC Rule 1:03.

## BACKGROUND

As the SJC is already familiar with this case, we provide an abridged version of the factual and procedural history.

Plaintiffs are owners and operators of 7-Eleven franchises in Massachusetts.  Each franchisee relationship with 7-Eleven is governed by a franchise agreement ("the Franchise

Agreement"), which Plaintiffs signed in order to establish each franchise location. The Franchise Agreement (which is materially the same between each individual Plaintiff and 7-Eleven) details the many obligations franchisees owe 7-Eleven, including (among many other things) holding themselves out to the public as independent contractors, participating in required trainings, manning their convenience stores 24 hours per day in 7-Eleven-approved uniforms, buying particular inventory from particular vendors, and using a designated system for payroll. Both upfront and throughout their franchisor-franchisee relationship, franchisees agree to pay various costs. Of note is the "7-Eleven Charge," which is approximately 50 percent of the store's gross profits owed to 7-Eleven. As a percentage of the store's gross profits (as opposed to a flat rate), the exact amount of the 7-Eleven Charge depends on the store's performance. For each franchisee, 7-Eleven establishes and maintains a bank account, where the store's gross profits are held and from which the 7-Eleven Charge is paid. After the 7-Eleven Charge is paid, 7-Eleven "agree[s] to . . . pay" each franchisee the remaining gross profits as weekly draw.

After Plaintiffs filed suit for alleged violations of the Massachusetts ICL, Mass. Gen. Laws ch. 149, § 148B, the Massachusetts Wage Act, Mass. Gen. Laws ch. 149, § 148, and the Massachusetts Minimum Wage Law, Mass. Gen. Laws ch. 151, §§ 1, 7,

both parties eventually moved for summary judgment. The district court ruled in 7-Eleven's favor and, in so doing, determined that the Massachusetts test for independent contractor misclassification conflicted with the Federal Trade Commission's ("FTC") franchise regulations known as the "Franchise Rule" and could, therefore, not be applied. A timely appeal followed, and this court certified the following question of law to the SJC: "Whether the three-prong test for independent contractor status set forth in Mass. Gen. Laws ch. 149 § 148B applies to the relationship between a franchisor and its franchisee, where the franchisor must also comply with the FTC Franchise Rule." Patel v. 7-Eleven, Inc., 8 F.4th 26, 29 (1st Cir. 2021). Answering our question, the SJC concluded that the ICL applies to franchisor-franchisee relationships and does not conflict with the FTC's Franchise Rule. Patel v. 7-Eleven, Inc., 489 Mass. 356, 357 (2022).

Back in the district court on remand, the parties moved for summary judgment (again), and the district court ruled in favor of 7-Eleven (again). This time, the district court concluded that the three-prong Massachusetts ICL test did not apply because Plaintiffs failed to surpass the ICL's threshold inquiry, which requires "performing any service" to the putative employer.[1] In

---

[1] The district court began its analysis here, following the SJC's lead in Patel. In addition to answering our certified

- 5 -

reaching that conclusion, the district court determined that Plaintiffs "are not paid for any services performed for 7-Eleven" and that it is Plaintiffs who "pay franchise fees to 7-Eleven in exchange for a variety of services to support the franchisee." Another timely appeal followed.

## THE ISSUES

With the facts and procedural history squared away, we now turn to the issues before us on appeal. The Massachusetts ICL provides that "an individual performing any service" is presumed to be an employee (and thereby entitled to the protections of Massachusetts wage laws), unless the putative employer satisfies the three prongs of the Massachusetts test for independent contractor misclassification, commonly known as the "ABC" test. Mass. Gen. Laws ch. 149, § 148B. The instant appeal concerns that threshold inquiry -- namely, whether Plaintiffs "perform[] any service" for 7-Eleven.

The parties do not agree on much, but they do rest their arguments on the same set of cases. Chief among them is the SJC's decision in Sebago v. Bos. Cab Dispatch, Inc., 471 Mass. 321

---

question, the SJC in Patel took our invitation to provide further guidance that might resolve this case. 489 Mass. at 369. Among the guidance provided was the SJC's instruction that the threshold inquiry "is not satisfied merely because a relationship between the parties benefits their mutual economic interests," nor is it satisfied through "required compliance with Federal or State regulatory obligations." Id. at 370.

- 6 -

(2015), which they each contend controls the outcome of this appeal. To understand the parties' arguments, some background on Sebago is helpful.

There, taxicab drivers brought misclassification claims against three sets of defendants: (1) medallion owners, who leased their taxicabs and medallions[2] to the drivers, thus enabling them to drive at regulated flat-rates; (2) radio associations, who dispatched the drivers and who maintained a network of corporate clients who would take rides with the drivers in exchange for cash-redeemable vouchers through the radio association; and (3) a garage that serviced the taxicabs and equipment. Id. at 323-26, 330-31. As to the medallion owners, the SJC concluded that the value those owners derived from their lessor-lessee relationship with the drivers did not suffice, without more, to qualify as a service provided to the medallion owners that would render the drivers employees under the ICL. See id. 329-31. The SJC determined, however, that a question of material fact existed as to whether the drivers provided other services, such as driving taxicabs with advertising space leased by the medallion owners (because driving such taxicabs would "increase[] the value and facilitate[] the sale of advertising space"), that might establish an employment relationship. See id. As to the radio associations, the SJC

---

[2] Medallions are the licenses an owner of a taxicab must obtain for each such taxicab. Sebago, 471 Mass. at 323.

determined that the drivers did perform services, because "[t]he revenue flowing to the radio association through the voucher program [with its corporate clients] . . . directly depende[d] on the drivers' work of transporting passengers." Id. at 331. Finally, as to the garage, the SJC explained that the drivers performed no services because the garage did "not lease taxicabs, maintain corporate voucher accounts, or belong to a radio dispatch association," rather earning its revenue "from setting up and servicing taxicabs" generally and "from credit card companies for repairs made to credit card machines installed in taxicabs." Id.

7-Eleven insists that its relationship with Plaintiffs is more akin to the lessor-lessee relationship between the medallion owners and drivers, which the SJC said did not satisfy the threshold inquiry of performing any service. In other words, 7-Eleven argues that Plaintiffs here pay it "for the rights and tools [Plaintiffs] need[] to operate [their] own [franchises]." It also distinguishes itself from the radio associations, arguing that "the [r]adio [a]ssociations sold a service to their own customers and then paid the [d]rivers to perform it," whereas 7-Eleven does not pay Plaintiffs for the performance of any obligation -- an argument adopted by the district court.

Plaintiffs flatly disagree, contending that their relationship with 7-Eleven mirrors that between the drivers and the radio associations. In their view, just as "[t]he revenue

- 8 -

flowing to the radio association" was "directly dependent on the drivers' work of transporting passengers," id., the revenue flowing to 7-Eleven necessarily fluctuates depending on how well each store performs from month to month.

In the mix are also the views of the Commonwealth of Massachusetts, represented here by the Massachusetts Attorney General as an *amicus curiae* in support of Plaintiffs. Not only does the Commonwealth agree with Plaintiffs' comparison to the radio associations, but it also highlights "that the threshold burden is modest" and contends that the district court erred in its application of that inquiry by considering the supposed services the putative employer (here, 7-Eleven) performs for the putative employees (here, Plaintiffs). Finally, as the statutory phrase "performing any service" is left undefined, the Commonwealth, after analyzing the plain language of the ICL and its legislative history, offered several distinct definitions of the phrase.[3]

---

[3] Relying on dictionaries, the Commonwealth provided definitions for each word making up the statutory phrase "performing any service." The Commonwealth defined "perform" as "to begin and carry through to completion; do" and "to take action in accordance with the requirements of; fulfill," while defining "any" as "one or some, regardless of sort, quantity, or number." As to "service," the Commonwealth provided four definitions: (1) "employment in duties or work for another"; (2) "an act of assistance or benefit to another or others; favor"; (3) "an act done for the benefit or at the command of another"; and (4) "action or use that furthers some end or purpose: conduct or performance that assists or benefits someone or something."

Pulling it all together, it is evident that this appeal turns on what entails "performing any service" as used in the ICL. While certainly helpful on this score, we do not consider the analysis in Sebago (or the other Massachusetts precedent cited by the parties[4]) to be outcome-determinative, at least without further instruction from the SJC. We, accordingly, believe it prudent to give the SJC the first opportunity to provide the answer to this question of state law, notwithstanding the tools at our disposal for resolving it ourselves. This is particularly true here where, as we noted before, "the ICL impacts untold sectors of workers and business owners across the Commonwealth" and the policy considerations at play do not squarely favor a particular outcome. Patel, 8 F.4th at 29.

**CERTIFICATION**

In light of the forgoing, we certify the following question[5] to the Massachusetts SJC:

> (1) Do Plaintiffs "perform[] any service" for 7-Eleven, within the meaning of Mass. Gen. Laws ch. 149, § 148B, where, as here, they perform various contractual obligations under the Franchise Agreement and 7-Eleven receives a percentage of the franchise's gross profits?

---

[4] See, e.g., Patel, 489 Mass. at 370; Jinks v. Credico (USA) LLC, 488 Mass. 691 (2021); Ruggiero v. Am. United Life Ins. Co., 137 F. Supp. 3d 104 (D. Mass. 2015); Da Costa v. Vanguard Cleaning Sys., Inc., No. 15-04743, 2017 WL 4817349 (Mass. Super. Ct. Sept. 29, 2017).

[5] We are grateful to the parties and the Commonwealth for their briefing and input as to which question or questions should be certified to the SJC.

We would welcome any further guidance from the SJC on any other relevant aspect of Massachusetts law that it believes would aid in the proper resolution of the issues presented here.

The clerk of this court is directed to forward to the Massachusetts SJC, under the official seal of this court, a copy of the certified question, this opinion, the district court's opinion, and the merits briefs and appendices filed by the parties. We retain jurisdiction over this case pending resolution of this certified question.